IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FRANK T. WHITEHEAD,

                Petitioner,

v.

MICHAEL MEISNER,[1]

                Respondent.

OPINION and ORDER

16-cv-229-wmc

---

Petitioner Frank Whitehead has filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254, raising seven different challenges to his 2012 conviction for first degree sexual assault of a child and threats to injure or accuse of a crime on the grounds that he received ineffective assistance of counsel at trial and on appeal in violation of the Sixth Amendment. (Dkt. #22.) As explained below, Whitehead's petition must be denied because: (1) the Wisconsin Court of Appeals reasonably applied clearly established federal law and based its decision on a reasonable interpretation of the facts in rejecting the three claims he raised in state court; and (2) he has failed to provide grounds to overcome his procedural default of the remaining four claims.

---

[1] The court has revised the caption to reflect that Meisner is the Warden of Fox Lake Correctional Institution, where petitioner is now in custody.

BACKGROUND[2]

**A. State Proceedings**

In 2012, the state charged Whitehead with first-degree sexual assault of an 11-year-old (T.S.), claiming that Whitehead threatened to harm T.S. and her family if she told anyone about the assault. (Dkt. #39-1, at 1 and #39-9, at 8.) At Whitehead's August 2012 jury trial in Circuit Court for Douglas County, Wisconsin, Case No. 2012CF133, Whitehead argued that T.S. and her mother, M.S., had falsely accused him of sexual assault. In particular, Whitehead's attorney, Patrick O'Neill, sought to draw attention to inconsistencies in T.S.'s testimony and to show that T.S. and M.S. had changed their version of events during the government's investigation. (*See* dkt. #39-5, at 2.)

In contrast, T.S. testified that Whitehead was her neighbor, and she occasionally went to his house to play with his stepsons or to earn extra money by doing chores. On the day of the alleged assault in January 2012, T.S. testified that she and her younger brother, S.S., walked to Whitehead's house, where Whitehead volunteered that his stepsons had gotten new bicycles and asked if they would like to buy the stepsons' two, used bicycles. With Whitehead's encouragement, S.S. then went to Whitehead's shed to pick out a bike and ride it home to ask his mother to come back and pay for it.

After S.S. left, T.S. testified that Whitehead asked her to come inside to do some housework. However, T.S. further testified that after she went inside the house, Whitehead

---

[2] The following facts are taken from the pleadings and state court record submitted by the parties, but the summary of the trial testimony is taken primarily from the Wisconsin Court of Appeals' decision denying Whitehead's direct appeal, *State v. Whitehead*, No. 2014AP460-CR (Nov. 11, 2014), and later appeal of the circuit's denial of his postconviction motion, *State v. Whitehead*, No. 2018AP83 (Jul. 21, 2020). (*See* dkt. ##39-5 and 39-11.)

2

forced her to lie down onto a bed, forced her to engage in oral sex, and then forced her to touch his testicles. When T.S. managed to get away from Whitehead and run out of the house, she testified that Whitehead threatened to make T.S. or her family "disappear" if she told anyone about the assault. (Dkt. #39-5, at 2.)

When she arrived home, T.S. testified her mother drove them back to Whitehead's house to pay for S.S.'s bike while S.S. rode his bike to Whitehead's house on his new bike. Arriving with her mother, T.S. testified she stayed in the van while her mother picked out a bike for her, and when her mother told her Whitehead had offered that T.S. could pay off the bike by doing chores for him, T.S. merely said that she needed to go home, and then later made excuses not to go back to Whitehead's house.

On cross-examination, T.S. confirmed that her mother had told her never to be alone with Whitehead, but explained she was told that only *after* Whitehead had already assaulted her. When asked why her mother told her not to be alone with Whitehead, T.S. stated that her older sister, C.S., did not want to be around Whitehead anymore. More specifically, T.S. acknowledged during cross-examination that she had "told investigators shortly after reporting the assault that she had known Whitehead for three years and 'the second year [C.S.] said that [Whitehead] tried to have sex with her, and [T.S.] really didn't believe it because [she] thought [Whitehead] was a nice guy and everything, but then the third year he tried with me." (Dkt. #39-5, at 3.)

The State's next witness was M.S., who confirmed that on the day of the alleged assault, she drove T.S. back to Whitehead's house and he found a bike for T.S. M.S. further testified that S.S. biked to Whitehead's house and picked out a different bike. M.S. then paid $20 for

3

both bikes. M.S. testified that she believed that T.S. stayed in the van during this sales transaction, although she was uncertain.

About three months later, on April 10, 2012, M.S. testified that T.S. told her about Whitehead's sexual assault, which M.S. reported to the police the following morning. On cross-examination, M.S. acknowledged that she had warned T.S. not to be alone with Whitehead before the alleged assault but had not told T.S. why. Defense counsel also challenged M.S. with claimed inconsistencies in her previous, typewritten statement prepared before reporting the incident to the police, as well as prior testimony at both preliminary and restraining order hearings about what happened on the day of the assault, including that T.S. picked out a bike herself and she had left T.S. with Whitehead *after* purchasing the bikes. M.S. admitted that her recollection of these events was unclear, and she was mistaken in previously stating that she had left T.S. alone with Whitehead after buying the bicycles. On redirect, M.S. also testified that she remembered getting into an argument with Whitehead at the hearing for a restraining order, during which Whitehead accused her of threatening to get even with him and made a racial slur.

Whitehead was the only defense witness. He testified that M.S. drove to his house with T.S. and S.S. on either the first or second Saturday of January 2012. According to Whitehead, they all went to the shed where he stored bikes, the children each picked one out, M.S. paid him $20, T.S. and S.S. rode away on their bikes, and M.S. drove away. Whitehead also denied asking T.S. to stay at his house to do chores, denied that T.S. and S.S. had been at his house at any other time that day, and denied sexually assaulting T.S.

4

After the jury found Whitehead guilty of both charges, the circuit court imposed sentences totaling 20-years confinement followed by 15-years of extended supervision. (Dkt. #39-1.)

### B. Postconviction Motion and Direct Appeal

Following his trial, Whitehead moved for postconviction relief under Wis. Stat. § 809.30, alleging that trial counsel had been ineffective for four reasons and that he was entitled to a new trial in the interest of justice. (*See* dkt. #39-5, at 6.) After an evidentiary hearing, the circuit court denied that motion.

On direct appeal, Whitehead reasserted three of his ineffective assistance claims,[3] arguing that his trial counsel failed to: (1) question him about M.S. threatening him during a phone call just one week before he was charged with assaulting her daughter; (2) introduce a Douglas County Sheriff's Department report showing another county had investigated Whitehead for sexually assaulting C.S. and closed the case without further action; and (3) call T.S.'s nine-year-old brother, S.S., as a witness at trial, to contradict T.S.'s claim that she stayed in the van when M.S. purchased the bikes. (*See* dkt. #39-5, at 7-11.) The court of appeals affirmed Whitehead's conviction and the order denying his § 809.30 motion, rejecting each of his three allegations of ineffective assistance on the ground that he failed to show counsel's alleged errors were prejudicial. The Wisconsin Supreme Court denied Whitehead's petition for review on March 16, 2015. (*See* dkt. #39-7.)

---

[3] The court of appeals held that Whitehead had abandoned by failing to renew a fourth argument on appeal regarding his attorney's ineffectiveness. (*See* dkt. #39-5, at n. 2.)

### C. Federal and State Habeas Proceedings

Whitehead timely filed his initial habeas petition in this court on April 11, 2016, raising the three ineffective assistance of trial counsel claims addressed on direct appeal and a new, fourth claim that his appellate counsel failed to argue his trial counsel's ineffectiveness in not investigating and introducing at trial certain photos and other evidence obtained from his home. (Dkt. #1.) At Whitehead's request, this court stayed his petition while Whitehead pursued this fourth claim in state court, as well as an elaboration of his third claim regarding S.S.'s testimony, on the express condition that Whitehead file a postconviction motion in state court by December 15, 2016, and a motion in this court to lift the stay within 30 days of completing those state proceedings. (*See* dkt. ##6, 9, and 12.)

However, Whitehead did not file his postconviction motion in state court until March 2017, three months after the December 2016 deadline.[4] In that motion, Whitehead, who was then representing himself, asserted multiple allegations of ineffective assistance of trial and appellate counsel. (*See* dkt. #39-9, at 54-84.) The circuit court identified, addressed, and denied relief without a hearing on seven claims Whitehead raised in those filings, concluding that: (1) he had not alleged sufficient facts that would entitle him to relief; and (2) the issues raised on appeal by appellate counsel were clearly stronger than the new issues raised by Whitehead. (*See* dkt. #39-8, at 28-38.) The Wisconsin Court of Appeals affirmed the circuit court's denial of Whitehead's claims on July 21, 2020, in Case No.

---

[4] The court notes that Whitehead also filed a state habeas petition under *State v. Knight*, 168 Wis. 2d 509, 512-13, 484 N.W.2d 540 (1992), again alleging ineffective assistance of counsel, but the court of appeals denied that petition *ex parte* in *State ex rel. Whitehead v. Douma*, Case No. 2016AP463-W (WI App Apr. 21, 2017). (*See* dkt. #39-11, at 4.)

2018AP83, concluding that all five of his discernable claims were procedurally barred and any remaining claims were "inadequately developed to warrant consideration." (*See State v. Whitehead*, 2020 WI App 55, ¶ 1, 948 N.W.2d 490; dkt. #39-11, at 5 and n.2.) The Wisconsin Supreme Court denied Whitehead's subsequent petition for review on March 24, 2021, and he also failed to move to lift the stay or take any other action in this court within 30 days of that denial. (*See* dkt. #39-13.) Instead, Whitehead filed an amended habeas petition in this court on May 20, 2021, raising seven ineffective assistance of counsel claims that this court accepted and ordered the state to respond to without commenting on the conditions of the stay. (*See* dkt. ##22 and 31.)

OPINION

Whitehead again argues that his conviction should be vacated because he received ineffective assistance of counsel at trial and on appeal in violation of the Sixth Amendment. As in his original postconviction motion and on direct appeal, he contends that his trial counsel was ineffective for failing to: (1) introduce evidence that M.S. threatened Whitehead and used racial slurs against his stepsons on April 5, 2012, five days before T.S. alleged that Whitehead sexually assaulted her; (2) introduce evidence that a neighboring county found no basis to proceed against him for the alleged sexual assault of C.S.; and (3) call S.S. as a witness at trial to contradict T.S.'s claimed whereabouts on Whitehead's property on the day in question. As he did in his § 974.06 motion, Whitehead also raises four, additional claims that his postconviction and appellate counsel were ineffective in not challenging trial counsel's failure to: (4) seek exclusion of evidence that C.S. had previously alleged sexual assault against Whitehead; (5) investigate and offer into evidence four photographs that Whitehead's

7

girlfriend allegedly provided to an investigator before trial;[5] (6) object to an all-white jury pool under *Batson v. Kentucky*, 476 U.S. 79 (1986); and (7) offer testimony from Whitehead's stepsons and their friends that M.S. threatened them as well and used a racial slur against them on April 5, 2012. Respondent argues that claim nos. 1-3 fail on the merits, claim nos. 4-6 are procedurally defaulted or meritless, and claim no. 7 is simply a meritless, re-litigation of claim no. 1.

### I. Merits of Claims Nos. 1-3

Ineffective assistance of counsel claims are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both constitutionally deficient performance by counsel *and* actual prejudice as a result of the alleged deficiency. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). To show that a counsel's performance was constitutionally deficient in some way, the petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. Further, to show actual prejudice, the petitioner must demonstrate, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The U.S. Supreme Court also clarified in *Strickland* that "[t]he proper measure of attorney performance remains simply

---

[5] The four alleged photos include: (1) a picture of the victim and her brother smiling and standing with their bikes on the day of the alleged assault; (2) a picture of the victim and her brother taken after the date of the alleged assault following a birthday party at Whitehead's home; (3) a picture of the victim and another person outside of Whitehead's bedroom window, also taken after the date of the alleged assault; and (4) a picture from inside Whitehead's house that he suggests contradicts the T.S.'s description of the home's interior at trial. (*See* dkt. #39-11 at ¶ 17.)

reasonableness under prevailing professional norms," and "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688.

Because the Wisconsin Court of Appeals addressed the merits of these three claims, this court's review of those claims is subject to a particularly deferential standard of review under 28 U.S.C. § 2254(d). Specifically, Whitehead is not entitled to relief on these claims unless he shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). A decision is contrary to clearly established federal law "if the rule the decision applies differs from governing law set forth in Supreme Court cases." *Bailey v. Lemke*, 735 F.3d 945, 949-50 (7th Cir. 2013) (citations omitted). A decision involves an unreasonable application of Supreme Court precedent "if the decision, while identifying the correct governing rule of law, applies it unreasonably to the facts of the case." *Id*.

Alternatively, Whitehead can obtain relief by showing that the state court's adjudication of his claims "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Again, however, the federal court owes deference to the state court, especially the underlying state court findings of fact and credibility determinations, which are all presumed correct unless the petitioner presents "clear and convincing" evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014); *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013).

This court concludes that the Wisconsin Court of Appeals' analysis of these three claims was based on a reasonable application of *Strickland*, and Whitehead has identified no basis on which this court could conclude that the rejection of his claims fell "well outside" the

9

boundaries of permissible differences of opinion. *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (federal court cannot grant habeas relief unless state court decision was "'unreasonable,' which means something like lying well outside the boundaries of permissible differences of opinion"). Even so, the court addresses those claims separately below.

### A. Claim No. 1

Whitehead again argues that his trial attorney should have questioned him at trial about the fact that M.S. threatened him during a phone call approximately one week before he was actually accused of sexually assaulting T.S. During the evidentiary hearing held on Whitehead's postconviction motion, however, the court of appeals found Whitehead's trial counsel had testified that while he knew about the phone call before trial, he did not ask M.S. about it at trial because he was confident both that M.S. would deny it and that Whitehead's testimony about the call would be more effective without M.S.'s denial. Moreover, as Whitehead points out, and the court of appeals recognized, trial counsel did not in fact question Whitehead about the phone call during trial. Nonetheless, the court of appeals determined that even if trial counsel erred in this respect, Whitehead could not show actual prejudice because the jury already knew that he had accused M.S. of making a threatening call. Specifically, M.S. testified during her redirect that Whitehead had claimed at the restraining order hearing that she had threatened him and made racial slurs. Whitehead argued in the court of appeals, as he does before this court, that M.S. incorrectly stated that a racial slur was directed at Whitehead, rather than at his stepsons, and he would have testified that the threat occurred only five days before charges were

10

filed against him. Regardless, the court of appeals reasonably determined that the outcome of the trial would not have been different had this information been presented to the jury. Indeed, as the court of appeals reasonably pointed out: (1) the jury knew that Whitehead believed M.S. had threatened him, regardless of who was the target of the racial slurs; and (2) the timing of the threat may have added *probative value* to M.S.'s credibility, but it was in no way *determinative* of it.

B.  Claim No. 2

Whitehead next argues once more that his trial attorney was ineffective by failing to introduce a Douglas County Sheriff's Department report stating another county had investigated an allegation that Whitehead sexually assaulted T.S.'s older sister, C.S., but it "appears that they are closing their case without further action." (Dkt. #39-5, at ¶ 21.) The relevance or admissibility of such hearsay is dubious on its face. Moreover, the court of appeals reasonably determined that even if trial counsel's failure to introduce the report constituted deficient performance, it did not prejudice Whitehead because the jury already knew that he had *not* been convicted of sexually assaulting C.S. Indeed, while Whitehead testified that he had been convicted of 20 different crimes, none of those were for sexual assault. Accordingly, the court of appeals acted within the boundaries of reasonableness in concluding that the result of the trial would not have been different had the jury specifically been told about the report, especially because the report did not discuss the results of the investigation or speak to Whitehead's innocence.

### C. Claim No. 3

Whitehouse further argues that his trial counsel was ineffective in not calling T.S.'s nine-year-old brother, S.S., as a witness to testify as to T.S.'s whereabouts both before and after Whitehead allegedly assaulted her. In Whitehead's view, S.S. *could* have introduced inconsistencies in T.S.'s testimony about details from the day of the alleged assault. However, the court of appeals considered this contention and reasonably determined that S.S.'s testimony at most would have introduced only minor discrepancies in T.S.'s version of events -- such as whether she got out of the van at all when they returned with their mother to pick out bicycles, or that T.S. did not personally pick out a bike. If anything, S.S.'s material testimony at the *Machner* hearing corroborated T.S.'s testimony in two important respects: (1) both children went to Whitehead's home multiple times on the day of the assault, contrary to Whitehead's testimony that they were there only once; and (2) S.S. left T.S. alone with Whitehead when he rode his bike home, contrary to Whitehead's testimony that he was not alone with T.S. on the day in question. (*See* dkt. #39-5, at ¶ 24.) Accordingly, the court of appeals' conclusion that S.S.'s testimony likely would not have helped Whitehead, and may even have bolstered the state's case, falls well within the boundaries of permissible differences of strategic opinion between a lawyer and his or her client.

## II. Procedural Default of Claim Nos. 4-7

Before state prisoners file a habeas petition in federal court under 28 U.S.C. § 2254, they must first assert their claim throughout at least one complete round of state-court review.

12

*Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014).  When failing to do so -- either because of an omission of a claim from the state proceedings or failure to comply with the state's procedural requirements in presenting a claim -- the issue is deemed procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 9-10 (2012) ("A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed."); *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017).

While Wisconsin's statute governing postconviction motions, Wis. Stat. § 974.06, allows defendants to attack their convictions collaterally on constitutional grounds after the time for seeking a direct appeal or other post-conviction remedy has expired, a petitioner is procedurally barred from raising a claim in a post-conviction motion that he could have raised on direct appeal *unless* he has a "sufficient reason" for not raising the issue on direct appeal. *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185, 517 N.W.2d 157, 164 (1994); Wis. Stat. § 974.06(4).  Moreover, ineffective assistance of post-conviction or appellate counsel may constitute a sufficient reason to excuse a procedural default.  *Garcia v. Cromwell*, 28 F.4th 764, 773 (7th Cir. 2022); *see also State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 682, 556 N.W. 2d 136, 139 (Ct. App. 1996) (describing procedure for challenging effectiveness of postconviction counsel); *State v. Knight*, 168 Wis. 2d 509, 520, 484 N.W.2d 540, 544 (1992) (same for appellate counsel).  However, this "gateway to merits review of a defaulted claim carries a heightened pleading burden" and would apply only if Whitehead provided "factual allegations showing that [his] defaulted claims were 'clearly stronger' than the issues

postconviction counsel chose to present." *Garcia*, 28 F.4th at 767 (citing *State v. Romero-Georgana*, 360 Wis. 2d 522, 545 (2014)).

In this case, Whitehead sought and was granted an opportunity to challenge the effectiveness of his postconviction and appellate counsel under these new grounds in state court, which he did in March 2017. After the circuit court denied this Wis. Stat. § 974.06 motion, the state court of appeals also issued a thorough and well-reasoned opinion, finding that Whitehead had procedurally defaulted the five, discernable claims of ineffective assistance of postconviction counsel by failing to show that any of the four issues (claim nos. 4-6 in amended federal petition) were clearly stronger than those presented by postconviction counsel and had already litigated a fifth issue (claim no. 7 in amended federal petition). This court incorporates that reasoning by reference and will not repeat it in this opinion.

The court of appeals' denial of Whitehead's postconviction motion based on the *Escalona-Naranjo* bar and on Whitehead's failure to satisfy *Romero-Georgana*'s pleading standard for overcoming procedural default are also independent and adequate state procedural grounds that preclude federal habeas relief, *Garcia*, 28 F.4th at 774-75, unless Whitehead demonstrates either: (1) cause for and prejudice stemming from that default; or (2) a denial of relief would result in a miscarriage of justice. *Wilson v. Cromwell*, 69 F.4th 410, 421 (7th Cir. 2023). "Cause requires a showing of 'some type of external impediment' that prevented him from presenting his claims," but Whitehead "has not identified any external impediment that prevented him from satisfying the *Romero-Georgana* pleading threshold necessary to obtain relief from the *Escalona-Naranjo* bar." *Garcia*, 28 F.4th at 775 (quoting *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012)). Rather, Whitehead repeats his complaints about his trial and postconviction counsel, but "errors by counsel in

14

the first round of postconviction proceedings cannot serve as cause to excuse [Whitehead's] *own* default in the second." *Id*. (emphasis in original).

Moreover, even if Whitehead had identified a cause external to him to excuse his default, he has not established prejudice since this court can find no reasonable probability of a different result had trial counsel not committed the errors Whitehead has alleged in grounds 4-7 of his petition. *Garcia*, 28 F.4th at 775 ("Looking through postconviction counsel's performance to the alleged errors of trial counsel, we do not see any reasonable probability of a different result had trial counsel" acted differently.).

Finally, "the miscarriage of justice exception applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *Wilson*, 69 F.4th at 421 (citations omitted). Indeed, "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with *new reliable* evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* (emphasis added); *see also Schlup v. Delo*, 513 U.S. 298, 329 (1995) ("The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty.").

Here, Whitehead primarily argues the importance of the evidence submitted at trial, neither developing an argument nor submitting new evidence to support an actual innocence exception. Indeed, while the photos of T.S. or additional witness testimony about M.S.'s threats and use of racial slurs *may* have raised some doubt as to the credibility of M.S. or T.S., no reasonable juror would have acquitted Whitehead based on that

15

evidence. Accordingly, Whitehead cannot overcome his procedural default of his ineffective assistance claims based on claim nos. 4-7, and the court need not address them further.

### III. Certificate of Appealability

The only remaining question on habeas review is whether to grant Whitehead a certificate of appealability. Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Since Whitehead has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the U.S. Supreme Court, no reasonable jurists would debate that the petition should have been resolved differently. Accordingly, the court will not issue Whitehead a certificate of appealability.

ORDER

IT IS ORDERED that petitioner Frank Whitehead's amended petition for a writ of habeas corpus under 28 U.S.C. § 2254 (dkt. #22) is DENIED; and Whitehead is DENIED a certificate of appealability.

Entered this 1st day of November, 2024.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge